LOTTINGER, Judge.
This is a suit resulting from the collision of two motorbikes at the intersection of Stanford Avenue and Hyacinth Street in Baton Rouge, Louisiana. Petitioner is James B. Nichols, who sues individually and for and on behalf of his minor son, James M. Nichols. Defendants are Wilton J. Anders, the father of Robert Daniel Anders, and plaintiff’s liability insurance carrier, Allstate Insurance Company. Allstate filed a third party action against defendant, Wilton J. Anders, for contribution of one-half of any judgment that might be rendered against Allstate and defendant Anders, based on joint tort liability and, in the alternative, asking for full compensation from defendant Anders should judgment be found against Allstate based on the uninsured motorist provision in Allstate’s policy issued to plaintiff Nichols.
The Lower Court gave judgment in favor of petitioner Nichols, individually and for and on behalf of his minor son, and against defendants, in solido, for the sum of $4,000.00 personal injuries, $994.15 medical and hospital expenses, and $97.92 property damages. On Allstates’ third party claim, judgment was rendered in its favor and against W. J. Anders, etc., in the sum of $4,994.15, it being stipulated by counsel for both parties that defendant Anders and his son were uninsured motorists within the meaning of the policy issued by Allstate. The defendants have taken this appeal on the question of liability, there being no argument as to the quantum allowed by the Lower Court.
The suit resulted from the collision of two motorbikes at the intersection of Stanford Avenue and Hyacinth Street in Baton Rouge, Louisiana, approximately 4:00 o’clock p.m. on the evening of July 24, 1966. It is contended by the counsel for defendants that this was a rear end collision and that the defendant rider of the forward bike, therefore, should have all the considerations and admissions in his favor and for his benefit allowed by law and jurisprudence of this State as against the following motorist. The Lower Court, however, found that this was not a rear end collision, but was a left turn collision caused when young Anders suddenly and without sufficient warning made a left-hand turn in the front of the following motorbike operated by young Nichols.
The evidence in the case, as found by the Lower Court, is as follows:
“Young James M. Nichols and young Robert Daniel Anders, each on his own motorbike, had been out riding together. They had been to several different places, and presumably had started home. They were going south on Stanford Avenue in Baton Rouge. Young Anders was in the lead and young Nichols was following him. Stanford Avenue is a two-lane, two-way street. From this situation the following facts developed.
Young Anders, on the witness stand, testified as follows:
'We were on Stanford headed for Highland Road. Nick was with me. When my friends in the car ahead of me turned left off of Stanford into Hyacinth, I decided to turn left, too. I was about a half block behind my friends when they turned left. If we had been going home when we got to Highland Road I would have turned right and Nick would have turned left to go to his home.’
Young Nichols, on the witness stand, testified that he did not see the friends in the car turn off of Stanford onto Hyacinth, and did not, of course, see them wave at Anders. Consequently, that he, Nichols, did not know, or have any idea, that young Anders was going to turn left at Hyacinth. This testimony by Nichols is in his deposition at page 23, taken on May 3, 1967.
The court is of the strong opinion that young Anders’ testimony, above quoted, *295 that when he saw his friends ahead of him in the car turn off of Stanford Avenue into Hyacinth, he, too, turned to his left, is very important to this case. This court is of the opinion that young Anders suddenly came to the conclusion to turn to his left to follow his friends, who had also turned to their left onto Hyacinth. There is testimony above by young Anders that had they been going home (as a matter of fact they were going home) that when they got to Highland Road he, Anders, would turn right to his home and young Nichols would turn left to go to his home. Young Nichols was following Anders and had no earthly way of knowing that Nichols (sic) expected to make a quick left turn ahead of him. In fact, from the above quotation of Anders’ testimony, he himself did not know he was going to make a left turn until the friends ahead of him in the car made a left turn and waved at him and called to him. In other words, from the testimony of the witness the court is firmly of the opinion that this was a left turn accident, and the citations of the danger of such a maneuver are too numerous to mention here, and too well known to need to be cited.”
We feel that the above conclusions as reached by the Lower Court are responsive to the evidence submitted on this case. Young Nichols testified that as he and young Anders were proceeding along Stanford Avenue, Anders was on the right side of the right lane and he, Nichols, was on the left side in the right lane. He testified that the back of Anders’ rear wheel was about even with the front of his front wheel when they were some thirty or forty yards from the site of the accident and were traveling at about thirty-five miles an hour. Nichols testified that when they got to the intersection, all of a sudden Anders veered over to the left turning in front of him and that there was nothing he could do to avoid the collision. He said that he never saw An-ders give any turn signal, that the first thing he saw was Anders leaning into his turn and the brake lights on his motorbike come on.
John Davis, who was driving the vehicle which turned onto Hyacinth Street just before the accident, testified that shortly before the accident it appeared to him that Nichols was some six or seven feet almost directly behind Anders. When they reached the point of about forty feet from the point of impact, Anders made a hand signal indicating what he presumed to be a left hand turn. It is interesting that what impressed him of the hand signal of An-ders was the swiftness in which it was given. He testified that Anders didn’t have much time to give his signal as he was slowing down and going into his lane to turn at the same time.
Danny Anders testified that prior to attempting to make his turn into Hyacinth Street, he gave what he testified as a brief signal and looked to his left side and didn’t see Nichols either on the left side of him or right to his rear, and he immediately commenced his turn.
The preponderance of the testimony shows that the point of impact between the two vehicles was the front wheel of the Nichols’ motorcycle hitting the left side axle of the back wheel of the Anders’ motorcycle. This impact point was testified to by young Nichols as well as the police officer who investigated the accident, who testified that the impact was to the left side of the rear wheel of the Anders’ vehicle.
Thus, the evidence indicates to us, as it did to the Lower Court, that the cause of this accident was a sharp and improper left turn made by the preceding motorcycle owned by young Anders without giving sufficient warning.
*296 Title 32, Section 194 of the Louisiana Revised Statutes provides that:
“Every person riding a bicycle upon a highway of this state shall be granted all of the rights and shall be subject to all the duties applicable to the driver of a vehicle by this Chapter, except as to special regulations in this Part and except as to those provisions of this Chapter which by their very nature can have no application.”
Thus, if our laws place bicycles in the same category as automobiles, it seems only logical that motorcycles or motorbikes would come into this category even more so and would thus be subject to the same regulations.
There is no question but that Stanford Avenue was a two-lane thoroughfare. One lane for traffic proceeding in one direction, and the other lane for traffic proceeding in the opposite direction. It is customary, and we see it every day, that individuals riding on bicycles or motorbikes ride side by side, or in close proximity to each other in a single lane of traffic. There is substantial evidence in the record to disclose that immediately before young Anders commenced his turn to the left, young Nichols was proceeding on his motorbike to the left of Anders and at some short distance to his rear. Thus, when Anders suddenly decided to turn at Hyacinth Street, he had not sufficient time to give a proper left turn signal, and proceeded to bank into his turn and give a swift signal at one and the same time turning directly in the path of the Nichols motorbike. This is what was found to be the case by the Lower Court, and we find no error in its decision in this regard.
For the reasons hereinabove assigned, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by defendants.
Judgment affirmed.